## SPRING v. PERKINS.

1. EXECUTORS AND ADMINISTRATORS — ADMINISTRATORS DE BONIS
NON—AUTHORITY FOR APPOINTMENT.

An instrument, guaranteeing the payment of a loan, was exe-
cuted to an administrator after the filing of the inventory of
the estate, and was not included in the final settlement of
such administrator.   After the death of the maker of said in-
strument, claimant petitioned for the appointment of an ad-
ministrator de bonis non for the purpose of presenting said
instrument as a claim against decedent's estate, and stated
that it, by agreement of the parties interested, had been with-
held from administration and had not been paid and was still
due the estate.   Held, that as the claim was not collected or
distributed by the general administrator, it still remained a
part of the estate, and the appointment of an administrator
de bonis non was therefore authorized.

2. STATUTE OF LIMITATIONS—ESTATES OF DECEDENTS—PART PAY-
MENT—PERSON TO WHOM MADE.

A payment, in order to tole the statute of limitations, must be
made to the creditor or to the one interested; and a payment,
made for the very purpose of preventing the running of the
statute, to one who represented all the interested parties, is
sufficient, although such person had been discharged as
administrator of the estate to which the debt was due.

3. ESTATES OF DECEDENTS—CLAIMS — INTEREST — COMPUTATION —
INSTRUCTIONS.

Error cannot be predicated upon an instruction that interest
could be computed from the date of the execution of an in-
strument guaranteeing the payment of a loan, the considera-
tion for which was an assignment at an earlier date of a pol-
icy of insurance pledged by the insured for the payment of
said loan; since from the language of the instrument itself in-
terest might have been computed from the earlier date.

4. WITNESSES—EXAMINATION—EXCLUSION OF TESTIMONY.

On the trial of a claim against an estate for a debt which the
claimant contended was revived by a payment made by the
debtor, a question to a witness (who claimed to have been
present at the time of such payment, and stated that he
knew of the hearing before the commissioners) as to why he

did not attend such hearing was properly excluded; no evidence appearing upon the record that the witness had been requested or subpœnaed to appear at such hearing.

5. NEW TRIAL—NEWLY DISCOVERED EVIDENCE.

A claim of newly discovered evidence cannot be maintained upon affidavits to the effect that the evidence of a witness upon the trial was not the same as that given by him upon the hearing before the commissioners; no reason being given in said motion why this evidence was not adduced on the trial in impeachment.

Error to Kent; Wolcott, J. Submitted January 11, 1909. (Docket No. 48.) Decided April 24, 1909.

John G. Spring, administrator de bonis non of the estate of Jared S. Spring, deceased, presented a claim against Willis B. Perkins and Peter Doran, executors of the last will and testament of Henry Spring, deceased, for the amount of a loan the payment of which had been guaranteed. The claim was disallowed by the commissioners, and claimant appealed to the circuit court. There was judgment for claimant, and contestants bring error. Affirmed.

*Peter Doran* and *Willard Kingsley,* for appellants.

*McKnight & McAllister,* for appellee.

MONTGOMERY, J. This action is brought by the claimant as administrator de bonis non of the estate of Jared S. Spring to recover upon an undertaking entered into by Henry Spring in his lifetime, reading as follows:

"Know all men by these presents, that I, Henry Spring, of the city of Grand Rapids, Michigan, for and in consideration of the assignment to me by J. G. Spring, administrator of the estate of Jared S. Spring, of the assignment of policy 151,662 in the Northwestern Mutual Life Insurance Company for the sum of $4,000, which was assigned February 2, 1887, to Jared S. Spring, by John A. Spring, I hereby assume and guarantee the payment of a certain loan of $4,000 made by Jared S. Spring and John A. Spring of Grand Rapids Fire Insurance Com-

pany and which is now owned by the estate of said Jared S. Spring. There has already been paid on the above loan by me the sum of $1,000, leaving a balance due of $3,000 and interest.

[Signed]        "HENRY SPRING."

Dated July 13, 1892.

On the trial of the case before a jury a recovery was had in favor of the claimant, and the case is brought here for review on error.

The points of error alleged are that the written memorandum upon which the action was based was withdrawn from administration, and therefore that it was not an asset of the estate of Jared S. Spring, deceased, and that the statute of limitations has run against the claim. There are also errors assigned on the subject of the admissibility of testimony and on the refusal to grant a motion for a new trial. It appeared on the trial that the instrument in question was executed after the inventory of the estate of Jared S. Spring. In the petition for the appointment of an administrator de bonis non, made by John G. Spring, who had been the general administrator, the following occurs:

"I represent, further, that at the time of my discharge, I held for the benefit of all the estate and as a part thereof which was by the agreement of all the parties interested therein withheld from administration, the obligation of Henry Spring, one of the distributees of said estate, amounting to $3,000 or thereabouts, which said Henry Spring had agreed in such writing to pay to the other distributees as therein agreed. I further represent that said obligation has not been paid and is still due the estate of said Jared Spring, and said Henry Spring is now deceased, and his estate is now being administered in this court."

On the trial, the evidence tended to disclose the assent of the other heirs of Jared S. Spring that Henry Spring should make payment to John G. Spring, who should then make a distribution of the proceeds, excluding one of the brothers who was understood to have received more than his share of the estate. It is urged, therefore,

that the authority which John G. Spring had to collect this claim was as agent of his brothers, and that it no longer belonged to the estate of Jared S. Spring.

One serious objection to this assumption is that there is no proof in the record that Henry Spring ever agreed that this should not remain and constitute a part of the estate of Jared S. Spring. It is true that, in the petition for letters of administration, the statement is made that the petitioner held, for the benefit of all the estate and as a part thereof, which was by agreement of the parties interested therein withheld from administration, the obligation of Henry Spring, one of the distributees of said estate, which said Henry Spring had agreed in such writing to pay to the other distributees as therein agreed. But this is to be read in connection with the further statement that "said obligation has not been paid and is still due to the estate of Jared Spring," and, when the instrument to which reference is made is appealed to, it shows that the obligation which Henry Spring assumed was not an obligation to pay this $3,000 to the individuals who were the other distributees of the estate of Jared S. Spring, but was a guarantee of payment of the amount and a statement that the claim was owned by the estate of Jared S. Spring, so that upon payment to the representative of the estate of Jared S. Spring, Henry Spring or his estate would be entitled to share in the proceeds. The most that can be said is that the parties withheld this claim, which was not in force at the time the inventory was made, from final distribution; that is to say, the fund was not collected or distributed by the general administrator. It never ceased to be a part of the estate of Jared S. Spring, and the appointment of an administrator de bonis non was therefore authorized.

The next question arises over the statute of limitations. It appears by the testimony that Henry Spring in 1903 made a payment to John G. Spring, when there was a vacancy in the administration, to apply on this obligation, and, if the testimony is credited, for the sole purpose of

keeping it alive. It is said in the brief of counsel that John G. Spring was a private person, and not invested with any official capacity, and acting solely as agent for parties whose interests were adverse to the general estate itself, and that under such circumstances a payment by Henry Spring did not operate to give the outlawed claim a renewed legal existence or restore it as a lawful asset of the closed estate of Jared S. Spring, deceased. The case of *Kisler* v. *Sanders,* 40 Ind. 78, is cited to sustain this contention. That was a case of a payment to the plaintiff before she was appointed administrator, and it was said:

" Was such a payment sufficient to take the case out of the operation of the statute of limitations? We think that it was not. * * * The very decided weight of the modern decisions is that the payment must be made to the creditor, or to some one lawfully acting in his behalf. * * * When the defendant paid the $5 to her she had no lawful right to receive it, and from such a payment a new promise cannot be inferred."

The learned trial judge, in commenting on this case and distinguishing it from the present, said:

"It seems to me that it is distinguishable from this case here. Mr. J. G. Spring had been regularly appointed administrator of this estate. There is evidence to the effect that he had it in his possession, and, if it was a valid claim, was one of the assets of the estate, one that he should under his letters of administration have collected or accounted for, but he failed to do it. Now, it seems to the court that, being a son of the deceased, the administrator of his estate, one of the beneficiaries, he stood in a different attitude than a stranger. If the debts were paid, he was one of the four beneficiaries, and one to whom this money should go. He had a personal interest in it, and, if the evidence here is to be credited, at least there is some evidence to show of a claim made that he was acting and authorized to act for the other brothers, the other beneficiaries, in collecting this money on this note or agreement."

We think these circumstances very clearly distinguish

the case from the Indiana case cited. It is undoubtedly true that a payment in order to tole the statute of limitations must be made to the creditor or to the one interested. In the present case it appears that John G. Spring was authorized by his brothers to receive this payment. He was the representative of all the parties in interest except Henry Spring, the payor, so that, with the very purpose of preventing the statute of limitations from running, Henry Spring, the payor, paid to a representative of all the other parties in interest a sum of money to revive the debt. The relation of John G. Spring to this obligation was such that an effective promise of payment might be made to him.

The case of *Robertson* v. *Burrill*, 22 Ont. App. 356, is very strongly in point. In that case it was held that an acknowledgment of indebtedness by letter written after the creditor's decease by the defendant to the person who was entitled to take out letters of administration to the creditor's estate, and who does, after the receipt of the letter, take out such letters, is a sufficient acknowledgment within the statute of limitations. The opinion of the majority court contains a review of the English cases, and is instructive. Maclennan, J. A., dissents, apparently upon the ground that, while the husband at the time the promise was made was entitled under the law to take out letters of administration, yet he was entitled to one-half of the distributive estate only, and—

"It might, however, have been that the intestate's estate was insolvent and that creditors were entitled to it all, and so that the plaintiff had in reality no interest whatever. In such a case it might be a creditor to whom administration would ultimately go."

He adds:

"I do not see how it could be held that a payment to the husband before administration could be good or would bind the estate, much less a mere acknowledgment."

The present case, however, meets the objections of the

dissenting opinion. Here all the parties interested in this estate, the debtor and those who were entitled to share with him in the proceeds of the payment, were represented in this transaction. We think the acknowledgment was good.

It is next contended that the court erred in permitting interest to be computed upon this obligation. We think it very clear, from the reading of the obligation itself, that it was understood that the claim bore interest. The language is:

"There has already been paid on the above loan by me the sum of $1,000, leaving a balance due of $3,000 and interest."

It might have been urged with much force that interest was due upon the obligation from the date of the assignment of the $4,000 claim February 2, 1887, but this claim was waived in the court below. That the obligation bore interest is manifest.

Jared S. Spring, Jr., a son of John G. Spring, was a witness to the payment by Henry Spring of the $4.50 which was shown to have revived this claim. He testified, on cross-examination, that he knew there was a trial to be had of this matter before the commissioner on claims, and answered the question, "But there was a hearing before commissioners on claims before Mr. Renihan, and Mr. Powers?" thus:

"I knew there was something; yes, sir.
"*Q.* You knew that they went down there to testify in that case, your father and your uncle Dan?
"*A.* Yes, sir."

Thereupon defendant's counsel asked witness the following question:

"*Q.* Why didn't you go down there?"

This was objected to and excluded. We think there was no abuse of discretion in refusing to receive this answer. It had not been made to appear that the witness

had been requested to appear before the commissioners,.
much less that he had been subpœnaed, and he could not
well know any reason which his father had for not sub-
pœnaing him.  It may have been that he, the father,
thought the testimony sufficient without that of the son.
Had the father been the witness on the stand and the
question as to why he did not subpœna or produce the
son, a different question would be presented.

The motion for a new trial was based upon the legal
questions heretofore discussed, and also upon a claim of
newly discovered evidence material for the defense.   Af-
fidavits were filed on behalf of the contestants made by
Mr. Doran, one of the attorneys in the case, and by others,
setting up that on the hearing before the commissioner on
claims John G. Spring had testified that at the time of
the payment of $4.50 at Rockford in 1903 no one else was
present, thus contradicting the testimony of the son, Jared
S. Spring, Jr., that he was present on that occasion.
The learned trial judge, in disposing of this question, said :

" The claim of newly discovered evidence cannot be
maintained on the showing made.  It consists of the af-
fidavit of Mr. Doran, the attorney in the case for the es-
tate of Henry Spring, and who also represented that es-
tate on the hearing before the commissioners on claims.
The affidavit is to the effect that the evidence given by one
of the witnesses for the claimant was not the same before
the commissioners on claims as in the court.   The other
affidavits are by the commissioners on claims to the same
effect.   No reason is suggested why this evidence was
not adduced on the trial in impeachment.   In no sense
can it be deemed newly discovered evidence."

The disposition made by the trial judge of this question
was very clearly within the previous rulings of this court.
See *Gray* v. *Barton*, 62 Mich. 186, and *Canfield* v. *City*
*of Jackson*, 112 Mich. 120.

The judgment of the circuit court will be affirmed.

Grant, Ostrander, Hooker, and Moore, JJ., con-
curred.